**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**NORTHERN DIVISION**

---

| | |
|---|---|
| Melissa Zahora, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-00705 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Orgain, LLC, | |
| Defendant | Jury Trial Demanded |

---

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Orgain, LLC ("defendant") manufactures, distributes, markets, labels and sells nutritional beverages to children, Kids Protein Organic Nutritional Shake – Vanilla,  under the Orgain brand  ("Product").

2.      Because the representations indicate the Product's main or "characterizing" flavor is vanilla, from the words, "Vanilla Flavor" and the picture of the vanilla flower, federal and state regulations require the front label to truthfully disclose to consumers the source of that flavor.[1] 21 C.F.R. § 101.22(i) (requiring statements as to whether flavor is from the characterizing ingredient, natural flavor derived from the ingredient, natural flavor from natural sources other than the ingredient or artificial sources).

---

[1] The FDCA and its regulations are  incorporated and adopted in Illinois's Illinois Food, Drug and Cosmetic Act ("IFDCA") and its parallel regulations.  See  410  ILCS  620/1,  et  seq.



3.      Based on (1) the absence of qualifying flavor statements such as "naturally flavored," "other natural flavor" and "artificially flavored" and (2) "Vanilla Flavor" and picture of the vanilla flower, consumers get the impression the Product's flavoring is only from the natural flavor of vanilla and does not contain artificial flavors.

A.  Vanilla

4.      Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

2

5.     The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for vanilla flavorings.

6.     The vanilla bean is heated in the sun for weeks, soaked in alcohol solution and its flavor constituents extracted (vanilla extract).

7.     Vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla extract.

8.     Vanillin is found in the form of its β-D-glucoside (glucovanillin) in green vanilla beans.

9.     The curing process, including the hydrolysis of its β-D-glucoside, leads to the release of vanillin from glucovanillin, at concentrations of 1-4% of dry weight of cured beans.

10.     Vanilla's unique and complex flavor is due to the hundreds of odor-active compounds such as acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

11.     Vanillin contributes to less than one-third of the overall flavor/aroma impact of vanilla.

12.     Methyl cinnamate and cinnamyl alcohol provide cinnamon and creamy notes.

13.     P-cresol contributes flavor notes described as woody and spicy.

14.     Acetovanillone provides a sweet, honey taste.

15.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

16.     4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral flavor notes.

17.     The isolation of vanillin from vanilla in the late 19th century resulted in foods

purporting to contain vanilla, which either contained no vanilla or a trace or *de minimis* amount, boosted by low cost, synthetic vanillin.

18.     However, vanillin only confers a sweet and creamy flavor, with a lackluster "chemical-like" taste and odor because it lacks the other molecules in vanilla.

19.     The representations of "Vanilla Flavor" with the vanilla flower and ingredient listing of "natural flavor" are misleading because the Product uses artificial flavor.

20.     This is false, misleading and deceptive because the only natural vanillin is not isolated commercially because it is part of "vanilla extract."

B.   Vanillin – "natural flavor"

21.     The only natural vanillin is from vanilla beans.

22.     the only natural vanillin is not isolated commercially because it is part of "vanilla extract."

23.     Vanillin may, though seldom is, a "natural flavor" as defined by the FDA:

> [T]he essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional. Natural flavors include the natural essence or extractives obtained from plants listed in §§ 182.10, 182.20, 182.40, and 182.50 and part 184 of this chapter, and the substances listed in § 172.510 of this chapter.

21 C.F.R. § 101.22(a)(3).

24.     This means that for vanillin to be labeled as "natural flavor," it must come from a natural source and be made through a natural process, such as distillation, roasting, heating, enzymolysis or fermentation.

25.     While enzymatic reactions exist to convert eugenol (and other natural sources) to vanillin, these methods are seldom used.

4

26.    For instance, the rate of conversion of eugenol to vanillin is very low, in part due to the toxicity and limited water solubility of eugenol.

C.    Artificial Flavor Vanillin – 101.22

27.    Artificial flavor is defined as any flavoring from a synthetic source or made through an artificial process. 21 C.F.R. § 101.22(a)(1).

28.    The sources of vanillin are petroleum (guaiacol), lignin (tree pulp), eugenol or ferulic acid.

29.    Guaiacol is the source of 85% of vanillin, and obtained from the synthetic petrochemicals, benzene and propylene, whose industrial source is petroleum.

30.    Converting guaiacol to vanillin entails condensation with glyoxylic acid.

31.    The processes include chemical reactions such as decarboxylation and aromatic substitution.

32.    Vanillin is also derived from lignin, present in sulfite wastes of the wood pulp industry.

33.    These sulfite wastes are not considered natural source materials because they contain chemicals that were used in the processing of wood pulp.

34.    Lignin is difficult to degrade by natural means, which is why production of vanillin from lignin entails chemical processes.

35.    Lignin is degraded either with sodium hydroxide or with calcium hydroxide solution and simultaneously oxidized in air in the presence of catalysts.

36.    When these chemical reactions are completed, the solid wastes and vanillin are removed from the acidified solution with a solvent, e.g., butanol or benzene, and reextracted with sodium hydrogen sulfite solution.

37.     The vanillin is subjected to reacidification with sulfuric acid followed by vacuum distillation, and several recrystallization cycles.

38.     Vanillin derived from lignin is an artificial flavor because the sulfite wastes of wood pulp are not a natural source, and the chemical reactions used to convert it to vanillin are not natural processes.

39.     Eugenol, the major constituent of clove oil, has been used a source of vanillin.

40.     The first method of converting eugenol to vanillin requires isomerization of eugenol to isoeugenol under alkaline conditions, followed by side-chain cleavage to vanillin and two-carbon moiety under acidic conditions.

41.     The second method of converting eugenol to vanillin involves the intermediary of coniferyl alcohol which is oxidized to ferulic acid.

42.     The ferulic acid is subjected to high heat of 800 degrees Celsius, high amounts of pressure, 20 atmospheric pressure units, and chemical catalysts, sodium hydroxide or sodium chloride.

43.     The high heat, high pressure and chemical catalysts are outside of what is considered a natural process for producing a natural flavor.

44.     The Product's added vanillin, made through an artificial process and from an artificial source, is required to be declared as an artificial flavor.

D.     Vanillin added to Vanilla is Always Required to be Listed as Artificial Flavor

45.     According to the FDA, *any* non-vanilla flavor compounds that simulate vanilla but are not derived from vanilla beans are considered artificial flavors.

46.     The FDA and FEMA have stated it is misleading to label a food with "Vanilla" with an image of a vanilla flower because this implies it is naturally flavored from the vanilla plant,

even though the predominant flavoring is not from the vanilla plant.

47.     Because the Product purports to have a characterizing flavor of vanilla but is flavored predominantly from vanillin, it must be identified as "as artificially flavored."

48.     This distinction between vanilla and non-vanilla flavors is only discussed in regulatory correspondence and binding FDA advisory opinions.

II.     Ingredient List is Misleading

49.     Analytical testing of the Product performed in the fall of 2020 revealed it contains added artificial flavor(s) which include vanillin.

50.     This was concluded because (1) the amount of vanillin was significantly greater than it would be if it were only present because of the Product containing vanilla extract as *part* of the "Natural Flavors" and "Natural Flavor" ingredients and (2) the vanillin was unaccompanied by the other flavoring components of vanilla from the vanilla plant, even though these compounds were screened for.

51.     For instance, the Product's flavoring failed to reveal detectable levels of methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, 4-methoxybnzaldehyde (p-anisaldehyde), 4-methyoxybenzyl alcohol (p-anisyl alcohol) and/or vanillic acid, even though these compounds were analyzed for.

52.     The absence of these aromatic compounds also means the Product contains, at most, a trace or de minimis amount of vanilla.

53.     In addition to containing artificial flavor, the Product lacks the expected vanilla taste because vanillin is not synonymous with vanilla, due to the absence of the critical odor-active compounds which contribute to the flavor of vanilla.

54.     The Product's ingredient list tacitly reveals it is not flavored exclusively with vanilla

because it lists the generic ingredient "natural flavor" instead of vanilla extract.

55.     However, the ingredient list conceals the added artificial flavor – vanillin – as part of the generic "natural flavors" and "natural flavor" instead of using the specific, non-generic name of the ingredient – "vanillin" or "artificial flavor." 21 C.F.R. § 101.4(b)(1).[2]

**Ingredients:**

FILTERED WATER, **ORGAIN ORGANIC PROTEIN BLEND™** (GRASS FED MILK PROTEIN CONCENTRATE*, WHEY PROTEIN CONCENTRATE*), CANE SUGAR*, HIGH OLEIC SUNFLOWER OIL*, RICE DEXTRIN*, NATURAL FLAVORS*, INULIN*, BROWN RICE SYRUP*, SUNFLOWER LECITHIN*, TRICALCIUM PHOSPHATE, DISODIUM PHOSPHATE, MAGNESIUM PHOSPHATE, **ORGAIN VITAMIN & MINERAL BLEND™** (SODIUM ASCORBATE, ZINC GLUCONATE, D-ALPHA TOCOPHERYL ACETATE, MANGANESE SULFATE, NIACINAMIDE, BETA CAROTENE, POTASSIUM IODIDE, CALCIUM-D-PANTOTHENATE, BIOTIN, CHROMIUM CHLORIDE, COPPER GLUCONATE, ERGOCALCIFEROL, SODIUM MOLYBDATE, FOLIC ACID, PYRIDOXINE HYDROCHLORIDE, RIBOFLAVIN, THIAMINE, SODIUM SELENATE, METHYLCOBALAMIN), POTASSIUM CHLORIDE, NATURAL FLAVOR, GELLAN GUM, SEA SALT, LOCUST BEAN GUM*, **ORGAIN ORGANIC FRUIT & VEGETABLE BLEND™** (APPLE FIBER*, ACAI*, BEET*, KALE*, RASPBERRY*, SPINACH*, TOMATO*, BANANA*, BLUEBERRY*, CARROT*)

**INGREDIENTS:** Filtered Water, Orgain Organic Protein Blend (Grass Fed Milk Protein Concentrate, Whey Protein Concentrate), Cane Sugar, High Oleic Sunflower Oil, Rice Dextrin, Natural Flavors, Inulin, Brown Rice Syrup, Sunflower Lecithin, Tricalcium Phosphate, Disodium Phosphate, Magnesium Phosphate, Orgain Vitamin & Mineral Blend Sodium Ascorbate, Zinc Gluconate, D-Alpha Tocopherol Acetate, Magnesium Sulfate, Niacinamide, Beta Carotene, Potassium Iodide, Calcium D-Pantothenate, Biotin, Chromium Chloride, Copper Gluconate, Ergocalciferol, Sodium Molybdate, Folic Acid, Pyridoxine Hydrochloride, Riboflavin, Thiamine, Sodium Selenate, Methylcobalamin), Potassium Chloride, Natural Flavor, Gellan Gum, Sea Salt, Locust Bean Gum, Orgain Organic Fruit & Vegetable Blend (Apple Fiber, Acai, Beet, Kale, Raspberry, Spinach, Tomato, Banana, Blueberry, Carrot).

56.     Even if reasonable consumers were to investigate the "Vanilla Flavor" statements on the Product's front label by scrutinizing the ingredient statement on the back, consumers would still be unaware that the Product contained artificial flavor.

57.     According to labeling experts – but not reasonable consumers – "Brands that print

---

[2] For conciseness, the "Natural Flavors" and "Natural Flavor" in the Product will be referred to as "Natural Flavor."

phrases like 'natural vanilla' [or 'natural flavor'] on their packages may actually be pushing products that contain anything but."[3]

58.     Professor of Food Science, Scott Rankin, at the University of Wisconsin-Madison, explained that "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."

59.     For instance, "natural vanilla flavor" often refers to "vanillin extracted from wood."

60.     "Natural flavor" on the other hand, "(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level)" and other flavorings that simulate vanilla.

61.     Defendant's "Natural Flavor" contains added artificial vanillin yet fails to disclose it separately.

A.  Front label

62.     Although the flavoring used to simulate the Product's characterizing vanilla flavor is (1) not from vanilla beans, (2) from an artificial petrochemical source and (3) made through an artificial process, Defendant pretends otherwise, conflating the natural and artificial flavoring and deceiving consumers.

63.     Even if the added artificial vanillin used in the Product was made from a natural source and through a natural process, the Product would still be required to state "artificially flavored" on the front label.

64.     Since the only natural vanillin is from the vanilla plant, the Product's added vanillin from other, non-vanilla sources is by definition, artificial, and an artificial flavor.

65.     Federal and state law require the Product's front label to inform consumers that the

---

[3] Yahoo Food, The One Thing You Need to Know When Buying Vanilla Ice Cream, May 20, 2015 (though the discussion was centered on ice cream, the identification of ingredients is identical on ice cream or oat milk).

Product contains artificial flavoring. 21 C.F.R. § 101.22(c).

66.     Because the Product contains artificial flavor that "simulates, resembles or reinforces the characterizing flavor," the front label is required to state, "Artificially Flavored."21 C.F.R. § 101.22(i)(2).

67.     Plaintiff and Class Members purchased the Product because they reasonably believed it was flavored only with natural ingredients like vanilla and did not contain artificial flavors.

68.     Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[4]

69.     According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

70.     Surveys have consistently found that at least seven out of ten consumers avoid artificial flavors.[5]

71.     Reasons for eschewing artificial flavors include a desire to avoid synthetic ingredients which have been associated with detrimental health effects.[6]

72.     "All demographics [of consumers] from Generation Z to Baby Boomers – say they would pay more" for foods with no artificial flavors because they are perceived as more natural.[7]

73.     Products made with natural instead of artificial flavors are "more popular than ever and approaching performance parity with their synthetic counterparts."[8]

74.     The label and ingredient list fail to reveal the presence of artificial flavor even though they are required by law to disclose this fact.

---

[4] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[5] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[6] Donna Berry, Playing the natural flavor game, Food Business News, Jan 1, 2018.
[7] Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.
[8] Kimberly Decker, Advances in natural flavors, Food & Beverage Insider Oct 12, 2020.

75.     Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

76.     Defendant sold more of the Product and at higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

77.     Had plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

78.     As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $6.99 for boxes of six 2 OZ pieces, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations.

<u>Delayed Discovery</u>

79.     Plaintiff and consumers would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law.

80.     Furthermore, Defendant's labeling practices and nondisclosures, in particular, failing to identify the artificial flavor on the front label and the ingredient list impeded Plaintiff and the Class Members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period.

<u>Jurisdiction and Venue</u>

81.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

82.     Under CAFA, district courts have original federal jurisdiction over class actions

involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity.

83.    Plaintiff Melissa Zahora is a citizen of Illinois.

84.    Defendant Orgain, LLC is a California limited liability company with a principal place of business in Irvine, Orange County, California and upon information and belief, at least one member of defendant is not a citizen of Illinois.

85.    Diversity exists because plaintiff Melissa Zahora and at least one of defendant's members are citizens of different states.

86.    Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

87.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – plaintiff's purchase of the Product.

88.    Venue is further supported because many class members reside in this District.

Parties

89.    Plaintiff Melissa Zahora is a citizen of Willowbrook, DuPage County, Illinois.

90.    Defendant Orgain, LLC is a California limited liability company with a principal place of business in Irvine, California, Orange County.

91.    Defendant is a seller of nutritional beverages which provide added protein.

92.    The Product is sold to consumers from retail and online stores of third-parties across the country and from defendant's website.

93.    During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State in reliance on its representations and omissions.

94.    Plaintiff bought the Product on one or more occasions within the statute of limitations

from one or more locations, including between February 2019 and February 2020, from Whole Foods Market, 6300 Kingery Highway Willowbrook IL 60527.

95.    Plaintiff bought the Product at or exceeding the above-referenced price because she wanted to buy a product with the qualities and attributes represented herein.

96.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

97.    The Products was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

98.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labeling is consistent with its composition and origins.

Class Allegations

99.    The class will consist of all purchasers of the Product who reside in Illinois, Iowa, Kansas and Indiana, during the applicable statutes of limitations.

100.    Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

101.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

102.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

103.    Plaintiff is an adequate representative because her interests do not conflict with other members.

104.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

13

105. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

106. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

107. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),</u>
<u>815 ILCS 505/1, *et seq.*</u>
<u>(Consumer Protection Statutes)</u>

108. Plaintiff incorporates by reference all preceding paragraphs.

109. Plaintiff and class members desired to purchase a product described and identified by Defendant – flavored only by vanilla and natural ingredients and not containing artificial flavor.

110. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

111. Defendant misrepresented the Product through its statements, omissions, ambiguities, half-truths and/or actions.

112. Defendant intended that Plaintiff and the Class rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

113. Defendant knew or should have known that its representations of fact concerning the Products are material and likely to mislead consumers.

114. Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

115. Like Plaintiff, Members of the Class would not have purchased the Products had they been accurately marketed, advertised, packaged, and/or sold.

116. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability</u>
<u>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

117.   Plaintiff incorporates by reference all preceding paragraphs.

118.   The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which it did not.

119.   The amount and proportion of the characterizing component, vanilla, and presence of artificial flavors, has a material bearing on price or consumer acceptance of the Product because consumers are willing to pay more for such components.

120.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

121.   This duty is based, in part, on Defendant's position as one of the most recognized companies in the nation in this sector and the marketing of the Product as a "Kids" beverage, which brings with it a special duty of care since it is sold generally to parents for their kids, who generally lack freedom to select their own foods and beverages.

122.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

123.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product.

124.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

125.   Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

Negligent Misrepresentation

126. Plaintiff incorporates by reference all preceding paragraphs.

127. Defendant had a duty to truthfully represent the Product, which it breached.

128. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

129. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

130. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

131. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

132. Plaintiff incorporates by reference all preceding paragraphs.

133. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

134. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

135. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

136. Plaintiff incorporates by reference all preceding paragraphs.

137. Defendant obtained benefits and monies because the Product was not as represented

16

and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 8, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com