UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Melissa Zahora, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    - against -<br><br>Orgain, LLC,<br><br>      Defendant | 1:21-cv-00705<br><br>First Amended Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Orgain, LLC ("defendant") manufactures, labels, markets and sells vegan protein shakes purportedly flavored by vanilla beans under the Orgain brand ("Product").

**I.  ORIGINS OF VANILLA BEANS**

2. Vanilla beans begin with the vanilla orchid, grown in tropical climates such as Madagascar.



3. The vanilla flower produces green vanilla beans.

1



4. Vanilla beans develop their unique flavor from being cured in the tropical sun.



5. The flavoring principles of vanilla beans are removed through immersion in alcohol.



<u>Beginning</u>  <u>Middle</u>  <u>End</u>

6. The alcohol gradually changes color to reflect the release of the millions of black seeds inside the vanilla beans, which contain the flavoring compounds.



7. While vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla flavor, it only contributes about one-third of its flavor and aroma.

8. The bulk of vanilla's flavor is from more than two hundred odor-active compounds, including acids, ethers, alcohols, acetals, heterocyclics, phenolics, esters and carbonyls.

9. These non-vanillin compounds are essential to what consumers expect from vanilla.

10. Methyl cinnamate and cinnamyl alcohol provide a cinnamon and creamy note.

11. Acetovanillone provides a sweet, honey taste.

12. P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

13. 4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral notes.

14. Invention of the chemically synthesized and low-cost vanillin and ethyl vanillin in the 19th century resulted in foods purporting to contain vanilla, which could not replicate the array of flavors from real vanilla.

## II. CONSUMERS SEEK VANILLA FLAVORS

15. Demand for vanilla has been steadily increasing due to consumer demand for natural flavor ingredients.

16. The front label tells consumers a half-truth through the disclosure that the Product has a "Vanilla Bean Flavor" above an image of the vanilla flower and two cured vanilla beans.



17. Reasonable consumers will expect that the Product's flavor is from extracts from vanilla beans.

4

18. This is based on a common expectation and standard practice that where a food or beverage contains artificial flavor which simulates the characterizing flavor, it will be declared on the front label, i.e., "Artificially Flavored." *See* 21 C.F.R. § 101.22(i)(2).

19. Even when a label contains pictures of vanilla beans, consumers know that "Artificially Flavored" means they should not expect extracts from vanilla beans.



A. <u>Product has de minimis or No Vanilla and Contains Artificial Flavoring</u>

20. Should consumers scrutinize the Product's ingredient list, they will not see "vanilla extract" or "vanilla beans," but see "locust bean[s]" and "NATURAL FLAVORS."

5

> INGREDIENTS: FILTERED WATER, ORGAIN ORGANIC PROTEIN BLEND™ (ORGANIC PEA PROTEIN, ORGANIC CHIA SEEDS), ORGANIC RICE DEXTRINS, ORGANIC CANE SUGAR, ORGANIC NATURAL FLAVORS, ORGANIC HIGH OLEIC SUNFLOWER OIL, ORGANIC INULIN, ORGAIN VITAMIN & MINERAL BLEND™ (SODIUM ASCORBATE, MAGNESIUM SULFATE, ZINC GLUCONATE, DL-ALPHA TOCOPHERYL ACETATE, NIACINAMIDE, VITAMIN A PALMITATE, POTASSIUM, IODIDE, COPPER GLUCONATE, BIOTIN, CALCIUM D-PANTOTHENATE, CYANOCOBALAMIN, ERGOCALCIFEROL, FOLIC ACID, THIAMINE HYDROCHLORIDE, PYRIDOXINE HYDROCHLORIDE, RIBOFLAVIN), ORGANIC RICE BRAN EXTRACT, TRICALCIUM PHOSPHATE, TRISODIUM PHOSPHATE, TRIPOTASSIUM CITRATE, GELLAN GUM, POTASSIUM CHLORIDE, ORGAIN ORGANIC FRUIT BLEND™ (ORGANIC ACAI, ORGANIC APPLE, ORGANIC BANANA, ORGANIC BLUEBERRY, ORGANIC RASPBERRY), ORGAIN ORGANIC VEGGIE BLEND™ (ORGANIC TOMATO, ORGANIC SPINACH, ORGANIC BEET, ORGANIC CARROT, ORGANIC KALE), NATURAL FLAVOR

> **INGREDIENTS:** Filtered Water, Orgain Organic Protein Blend (Organic Pea Protein, Organic Chia Seeds), Organic Rice Dextrins, Organic Cane Sugar, ==Organic Natural Flavors==, Organic High Oleic Sunflower Oil, Organic Inulin, Orgain Vitamin & Mineral Blend (Sodium Ascorbate, Magnesium Sulfate, Zinc Gluconate, Dl-Alpha Tocopheryl Acetate, Niacinamide, Vitamin A Palmitate, Potassium, Iodide, Copper Gluconate, Biotin, Calcium D-Pantothenate, Cyanocobalamin, Ergocalciferol, Folic Acid, Thiamine Hydrochloride, Pyridoxine Hydrochloride, Riboflavin), Organic Rice Bran Extract, Tricalcium Phosphate, Trisodium Phosphate, Tripotassium Citrate, Gellan Gum, Potassium Chloride, Orgain Organic Fruit Blend (Organic Acai, Organic Apple, Organic Banana, Organic Blueberry, Organic Raspberry), Orgain Organic Veggie Blend (Organic Tomato, Organic Spinach, Organic Beet, Organic Carrot, Organic Kale), ==Natural Flavor==

21.     Nowhere in the ingredient list are consumers told that the Product is not flavored from vanilla beans but by ethyl vanillin and vanillin, both artificial flavors.

22.     First, according to Scott Rankin, a professor of dairy foods at the University of

Wisconsin-Madison, "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."

23. For instance, "Natural flavor…(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association" with vanilla.

24. While this may be known to food labeling experts such as Dr. Rankin, it is not known to reasonable consumers, including Plaintiff.

25. Second, testing of the Product confirmed the Product's "vanilla" flavor is not from vanilla beans but artificial flavor.

26. The laboratory analysis isolated the flavor compounds and focused only on those compounds associated with vanilla beans.

27. Though testing identified vanillin, it was unaccompanied by the expected amounts of key aromatic compounds – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol).

B. <u>Vanillin Added to Vanilla is Required to be Disclosed as an Artificial Flavor</u>

28. The only natural vanillin is from vanilla beans, which means vanillin from non-vanilla sources is artificial.

29. The representation of "VANILLA BEAN FLAVOR" is misleading because the vanillin source is not from vanilla beans.

30. According to the legal counsel for FEMA, John Hallagan, a food that purports to

7

have a main flavor of vanilla must disclose vanillin from non-vanilla sources.[1]

31. The FDA agrees with Hallagan and wrote that it is misleading to label a food as "Vanilla [Bean]" when it is flavored with vanillin from non-vanilla sources. FDA Letter, Emerick to Brownell, February 25, 2016.

32. Since the Product's flavoring is predominantly from non-vanilla and its characterizing flavor is vanilla, the food must be identified as artificially flavored or "contains artificial flavor." 21 C.F.R. § 101.22(i).

C. <u>Added Vanillin is an Artificial Flavor because it is Made From Artificial Source</u>

33. Artificial flavors are flavors made from an artificial source or through a non-natural process. 21 C.F.R. § 101.22(a)(1).[2]

34. "Natural flavor" is defined as a flavor made from a natural source and through a natural process. 21 C.F.R. § 101.22(a)(3).

35. Should Defendant claim the non-vanilla vanillin is "natural," this would be false.

36. This is because the laboratory analysis detected guaiacol at atypically elevated levels, not explained by relation to any other compounds.

37. Guaiacol is a petrochemical precursor (coal tar), obtained from synthetic benzene and propylene, whose industrial source is petroleum.

38. Guaiacol is the source of 85% of artificial vanillin, and its detection indicates that it is the source of the "vanilla" taste.

39. Guaiacol is converted to vanillin through chemical reactions, condensation with

---

[1] John B. Hallagan and Joanna Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").

[2] "Natural flavor" is defined as a flavor made from a natural source and through a natural process. 21 C.F.R. § 101.22(a)(3).

glyoxylic acid, decarboxylation and the use of chemical catalysts, including sodium hydroxide and sodium chloride.

40. The detection of high levels of guaiacol is a "fingerprint" of artificial vanilla.[3]

41. Vanillin made from guaiacol is an artificial flavor because guaiacol is an artificial source, and it is made through non-natural processes. *See* 21 C.F.R. § 101.22(a)(1).

D. Product Contains Ethyl Vanillin, Which has no "Natural" Version

42. Laboratory analysis of the Product revealed ethyl vanillin at a concentration of 0.012 parts per million ("ppm").

43. Ethyl vanillin is an artificial molecule, that does not appear in nature. 21 C.F.R. § 182.60 ("Synthetic flavoring substances and adjuvants.").

44. Ethyl vanillin is between three and ten times more potent than vanillin from vanilla beans.

45. This means only a small amount is required to provide the same intensity of vanilla taste.

46. However, because ethyl vanillin lacks the other compounds in natural vanilla, its flavor is overly sweet, like cotton candy.

47. Ethylvanillin is prepared from "catechol, beginning with ethylation to give guaethol (1). This ether condenses with glyoxylic acid to give the corresponding mandelic acid derivative (2), which by oxidation (3) and decarboxylation, gives ethylvanillin (4)."[4]

---

[3] A.G. Huesgen, Analysis of natural and artificial vanilla preparations, Agilent Technologies, Inc.
[4] Wikipedia contributors, 'Ethylvanillin', *Wikipedia, The Free Encyclopedia,* 14 October 2020, 06:32 UTC, <https://en.wikipedia.org/w/index.php?title=Ethylvanillin&oldid=983435975>

[Chemical reaction scheme showing compounds 1, 2, 3, and 4 with reagents [OH⁻], O₂, and -CO₂ [H⁺]]

48. Catechol "is a toxic organic compound with the molecular formula $C_6H_4(OH)_2$. It is the ortho isomer of the three isomeric benzenediols."[5]

### E. Ingredient List is Misleading

49. The ingredient list is misleading because the artificial flavorings are required to be listed as "vanillin" (vanillin) and "artificial flavor" (ethyl vanillin), instead of "Natural Flavor" or "Organic Natural Flavors."

## II. CONCLUSION

50. Consumers are willing to pay, and have paid, a premium for products which have natural flavors over products that contain artificial flavors.

51. Although the flavoring used to simulate the Product's characterizing vanilla flavor is (1) not from vanilla beans, (2) from artificial petrochemical sources and (3) made through artificial processes, Defendant pretends otherwise, conflating natural and artificial flavoring, and deceiving consumers.

52. Because the Product contains artificial flavor that "simulates, resembles or reinforces the characterizing flavor," the front label is required to state, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

53. The Product lacks an authentic vanilla taste because of the absence of the critical

---

[5] Wikipedia contributors, 'Catechol', Wikipedia, The Free Encyclopedia, 1 April 2021, 08:44 UTC, <https://en.wikipedia.org/w/index.php?title=Catechol&oldid=1015405471>

odor-active compounds in vanilla.

54. The added vanillin (from an artificial source) and ethyl vanillin gives the Product a "sweet, creamy" taste, which is distinct from the multifaceted taste of natural vanilla beans.

55. The addition of extracts of vanilla beans to the Product in place of vanillin and ethyl vanillin would cost approximately $ 0.06 per 11 oz, a small increase on a product already sold at a premium price.

56. Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product.

57. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

58. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

59. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

60. The Product is sold for a price premium compared to other similar products, approximately $2.99 for one 11 oz container, and in 12-packs for roughly $29.99, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

61. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

62. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

63. Plaintiff Melissa Zahora is a citizen of Illinois.

64. Defendant Orgain, LLC is a California limited liability company with a principal place of business in Irvine, Orange County, California, and upon information and belief, at least one member of defendant is not a citizen of this state.

65. Venue is proper because plaintiff resides in this district and a substantial portion of the events giving rise to the claims occurred in this district.

## Parties

66. Plaintiff Melissa Zahora is a citizen of Willowbrook, DuPage County, Illinois.

67. Defendant Orgain, LLC, is a California limited liability company with a principal place of business in Irvine, California, Orange County.

68. Defendant is a seller of nutritional beverages which provide added protein.

69. The Product is sold to consumers from retail and online stores of third-parties across the country and from defendant's website

70. The Product is sold throughout this state in grocery stores, convenience stores, big box stores, gas station stores, warehouse stores, and is available online.

71. Plaintiff bought the Product and other varieties of Defendant's products, on one or more occasions within the statute of limitations for each cause of action alleged, including between February 2019 and February 2020, from stores including Whole Foods Market, 6300 Kingery Highway, Willowbrook, IL 60527.

72. Plaintiff bought the Product for no less than the above-referenced price.

73. Plaintiff saw the front label said, "Vanilla Bean Flavor" and expected most of the flavor would come from vanilla beans and none would come from artificial flavors.

74. Plaintiff did not observe pictures of coconuts and coconut oil on the front label.

75. Plaintiff would not have purchased the Product if she knew the representations were

12

false and misleading.

76. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

77. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

78. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

79. The class will consist of all Illinois residents who purchased the Product during the statutes of limitations for each cause of action alleged.

80. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

81. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

82. Plaintiff is an adequate representative because her interests do not conflict with other members.

83. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

84. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

85. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

86. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

87. Plaintiff incorporates by reference all preceding paragraphs.

88. Plaintiff and class members desired to purchase a Product which contained mostly flavor from vanilla beans and had no artificial flavors.

89. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

90. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

91. Plaintiff relied on the representations.

92. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

93. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that the Product's flavoring contained mostly flavor from vanilla beans and had no artificial flavors.

94. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

95. This duty is based on Defendant's outsized role in the market for this type of Product.

96. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

14

97. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

98. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

99. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

100. Defendant had a duty to truthfully represent the Product, which it breached.

101. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

102. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

103. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

104. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

105. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained mostly flavor from vanilla beans and had no artificial flavors

106. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

107. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated: July 19, 2021

                                            Respectfully submitted,

                                            Sheehan & Associates, P.C.
                                            /s/Spencer Sheehan

60 Cuttermill Rd Ste 409  
Great Neck NY 11021-3104  
Tel: (516) 268-7080  
Fax: (516) 234-7800  
spencer@spencersheehan.com

Case: 1:21-cv-00705 Document #: 17 Filed: 07/19/21 Page 17 of 17 PageID #:81